**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheila Leigh Alvey,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-08105-PHX-SPL<br><br>**ORDER** |

  Before the Court is Plaintiff Sheila Leigh Alvey's Motion for Award of Attorney Fees (Doc. 31) under the Equal Access to Justice Act ("EAJA"), 28 USC § 2412. Plaintiff requests attorneys' fees in the amount of $12,994.14. (Doc. 36 at 11). The Motion is fully briefed and ready for review. (Docs. 31, 32, 33, 36). For the reasons set forth below, the Motion is granted as modified.

**I.  BACKGROUND**

  On September 14, 2021, in response to the parties' Joint Motion to Alter or Amend Judgment (Doc. 28), the Court reversed the decision of the administrative law judge ("ALJ") and remanded Plaintiff's case to the agency for further proceedings. (Doc. 29). This makes Plaintiff a prevailing party for purposes of the EAJA.[1] Plaintiff now seeks attorneys' fees for work completed for the social security appeal. (Doc. 32-2 at 2–5).

---

[1] The remand in this case was a remand under "sentence four" of 42 U.S.C. § 405(g). (Doc. 29 at 1). Under *Shalala v. Schaefer*, 509 U.S. 292, 300–02 (1993), a social security claimant who secures a sentence four remand is a prevailing party under § 2412(d)(1).

## II. LEGAL STANDARD

The EAJA mandates that courts award fees and costs to the prevailing party other than the United States. 28 USC § 2412(d)(1)(A). The fees must be reasonable and "shall not be awarded in excess of $125 per hour unless the court determines an increase in the cost of living …. justifies a higher fee." § 2412(d)(2)(A).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation is known as the "lodestar method" and it provides an objective basis on which to make an initial estimate of the value of an attorney's services. *Id.* The party requesting the fees must submit evidence supporting the reasonableness of the hours worked and the rates claimed. *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

## III. DISCUSSION

Here, as stated, Plaintiff is a prevailing party for purposes of the EAJA. *See supra* pt. I. Courts must grant attorneys' fees under the EAJA, but the party seeking fees must—in addition to submitting an itemized statement of the actual time expended and hourly rates from its attorney—allege that the position of the United States was not "substantially justified." § 2412(d)(1)(B). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record." *Id.*

Plaintiff submits a memorandum in support of her motion for fees, including the fee agreement, attorney time and task records, and the affidavit of Plaintiff's counsel Mark Caldwell. (Docs. 32, 32-1, 32-2, 32-3). Mr. Caldwell and two other attorneys, Ms. Sarah Fern and Ms. Robin Larkin, spent a total of 58.1 hours on the case, over a period of approximately 20 months. (Doc. 32-2 at 2–3, 5). Additionally, Mr. Caldwell spent 3.5 hours preparing the Reply memorandum in response to Defendant's opposition concerning this EAJA litigation. (Doc. 36 at 11). Thus, Mr. Caldwell asserts that a total of 61.6 hours were spent on this case—28.9 hours in 2020 and 32.7 hours in 2021 and 2022. Mr. Caldwell

calculated the hourly rate adjusted for cost of living based on the $125 rate prescribed in the statute. (Doc. 32 at 4–5). The hourly rate for 2020 was $207.78 and the hourly rate for 2021 and 2022[2] was $213.74. (Docs. 32-2 at 5 & 36 at 11). Thus, in total, Plaintiff requests $12,994.14 in attorneys' fees for 61.6 hours of work between April 2020 and January 2022.

Plaintiff alleges that the position of Defendant was not substantially justified because Defendant moved for remand for further proceedings in this case. (Doc. 32 at 3–4). Plaintiff asserts that, in doing so, Defendant "effectively admitted" its lack of substantial justification. (*Id.* at 4). Defendant does not contest this argument in its Response. Instead, Defendant asserts that Plaintiff is not entitled to the fees she requests because they are unreasonable. (Doc. 33 at 3). Defendant identifies five specific instances where it asserts a reduction is warranted. (*Id.* at 3–7). All told, Defendant requests that this Court reduce Plaintiff's fee request by 30.3 hours—12.2 hours in 2020 and 18.1 hours in 2021. (*Id.* at 7). This equates to a $6,403.61 reduction; thus, Defendant requests that this Court award no more than $5,842.44. (*Id.*).

It is up to the court to determine whether fees are reasonable, using the lodestar calculation. The "lodestar" calculation tells courts to multiply the number of hours reasonably spent by the reasonable hourly rate. *Hensley*, 461 U.S. at 433. Here the hourly rate is not contested and appears reasonable, so the Court will not question it. However, in the Ninth Circuit, there are several factors that a district court may use when determining the reasonableness of an attorneys' fees request. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (abrogated on other grounds). Such factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment

---

[2] Although Plaintiff's itemization of services does not include the hourly rate for 2022 (*see* Doc. 32-2 at 5), Plaintiff indicates that the 2021 hourly rate—$213.74—also applies to the 3.5 hours Mr. Caldwell spent in preparing the Reply on January 20, 2022. (Doc. 36 at 11). Additionally, although Plaintiff indicates that these 3.5 hours were logged on January 20, 2020, the Court finds this to be in error and that Plaintiff intended the date of January 20, 2022. (*See id.*).

by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.* (internal quotations and citation omitted).

### A. Time Billed Prior to Filing of Complaint

First, Defendant argues that Plaintiff should not be entirely compensated for the 17.3 hours spent *before* the Complaint was filed on May 5, 2020. (Doc. 33 at 4). In support of this argument, Defendant cites to caselaw purportedly standing for the proposition that "[t]ime billed prior to litigation is typically not compensable." (*Id.*). This Court finds that Defendant mischaracterizes the case holdings. Defendant first cites to *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991), for the proposition that "compensation is not permitted for work performed before a suit has been brought in a court." (Doc. 33 at 4). However, *Melkonyan* dealt only with the compensability of "work done at the administrative level," and *not* with work done in preparation for judicial proceedings after administrative proceedings are concluded. *Melkonyan*, 501 U.S. at 96–97. Defendant also cites to *Mendenhall v. NTSB*, 213 F.3d 464, 469 (9th Cir. 2000), for the proposition that "the EAJA amounts to a partial waiver of sovereign immunity and therefore must be strictly construed in favor of the government; attorney fees incurred outside a civil suit are not compensable." (Doc. 33 at 4). Again, Defendant overstates the holding. *Mendenhall* holds only that "attorneys' fees incurred *in administrative proceedings* prior to the filing of a civil suit" are not compensable under EAJA, not that *all* attorneys' fees incurred prior to the suit are not compensable. *Mendenhall*, 213 F.3d at 468–69 (emphasis added).[3] Finally, Defendant

---

[3] As Plaintiff points out, this Court has previously rejected Defendant's characterizations of both *Melkonyan* and *Mendenhall*:

> To the extent that the Commissioner suggests that any time expended prior to the filing of the Complaint is not compensable, that proposition is rejected. . . . [T]he reported

4

cites to *Presley v. Colvin*, No. 14-CV-01814-JD (N.D. Cal. May 10, 2016), ECF No. 39 at 2, asserting that the court there "subtracted $519.51 because it was charged for time spent before the complaint was filed." (Doc. 33 at 4). While this is true, the *Presley* Court did not elaborate on its reasoning or cite to any caselaw standing for the proposition that time spent before the complaint is automatically non-compensable. *Presley*, No. 14-CV-01814-JD, ECF No. 39 at 2. Moreover, it appears that the *Presley* Court granted the government's proposed reduction—at least in part—because the plaintiff did not dispute the reduction in its reply memorandum. *Id.*

Here, the administrative proceedings were concluded on March 6, 2020, when the Social Security Administration Appeals Council denied Plaintiff's appeal and adopted the ALJ decision as the agency's final decision. (Doc. 1 at 2). Thus, the time entries at issue—all between April 9, 2020, and May 4, 2020—were not incurred during the administrative proceedings. (Doc. 32-2 at 2). Rather, these time entries can only be interpreted as being "a routine part of the Complaint preparation process." *Riston v. Comm'r of Soc. Sec. Admin.*, No. CV-19-03050-PHX-JFM (D. Ariz. Dec. 4, 2020), ECF No. 23 at 3 (rejecting same argument). Therefore, the *Melkonyan* and *Mendenhall* holdings are inapplicable because they apply only to the compensability of fees incurred during the administrative

---

cases cited by the Commissioner suggesting the proposition do not set the filing of the Complaint as the triggering event, but rather the preparation of the court complaint. *See . . . Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991) (addressing only non-compensability of "work done at the administrative level"); *Mendenhall v. NTSB*, 213 F.3d 464, 469 (9th Cir. 2000) ("attorneys' fees incurred in administrative proceedings prior to the filing of a civil suit" not compensable under EAJA).

The Court finds that the administrative proceedings were concluded on March 15, 2019, when the Appeals Council denied the administrative appeal. . . . Thus, the only reasonable interpretation of this time entry is that it was a routine part of the Complaint preparation process, *i.e.*, reviewing the proceedings being challenged, and thus expended on the litigation.

*Riston v. Comm'r of Soc. Sec. Admin.*, No. CV-19-03050-PHX-JFM (D. Ariz. Dec. 4, 2020), ECF No. 23 at 2–3.

5

proceedings. The Court is unpersuaded by Defendant's cited caselaw and rejects Defendant's proposition that time billed prior to the filing of a complaint is automatically non-compensable.

That said, the Court must still address the reasonableness of the time billed by Plaintiff prior to the filing of the Complaint. On April 9, 2020, Mr. Caldwell received and reviewed emails regarding a potential federal court appeal. (Doc. 32-2 at 2). On April 19, Plaintiff's attorney Sarah Fern reviewed documents from the administrative proceedings, the exhibits file, and a memo from another attorney regarding the merits of a federal court appeal. (*Id.*). Ms. Fern emailed a memo to Mr. Caldwell explaining her conclusion that more information was needed. (*Id.*). On April 20, Mr. Caldwell reviewed Ms. Fern's memo and copied it to James Mitchell, the Federal Court Appeals Coordinator. (*Id.*). That same day, Mr. Caldwell was copied on an email from Mr. Mitchell and reviewed a reply to Mr. Mitchell's email from another attorney. (*Id.*). Also on April 20, Ms. Fern reviewed the updated information—presumably the information that was missing—and conducted research. (*Id.*). She then prepared and sent a second memo to Mr. Caldwell, attaching her research. (*Id.*). On May 3, Mr. Caldwell reviewed many of the same documents that were reviewed by Ms. Fern on April 19. (*Id.*). He then conducted some legal research of his own. (*Id.*). On May 4, Mr. Caldwell exchanged emails and conducted telephone conferences with Mr. Mitchell, Ms. Fern, and Plaintiff's attorney Robin Larkin. (*Id.*). That same day, Mr. Caldwell drafted the complaint and emailed it to Mr. Mitchell, Ms. Fern, and Ms. Larkin. Mr. Caldwell also sent a memo to Ms. Fern and Ms. Larkin regarding "ideas" for the opening brief. (*Id.*). Finally, Mr. Caldwell received edits to the Complaint from Mr. Mitchell and prepared the final draft, which was filed the next day. (*Id.*). Added together, these task entries totaled 17.3 hours. (*Id.*).

Defendant argues that 17.3 hours is unreasonable because it is "well over the amount of time" Plaintiff's counsel needed to review the case and prepare the Complaint, particularly given his experience with these legal issues. (Doc. 33 at 4). Defendant takes issue with Plaintiff billing hours for both Ms. Fern *and* Mr. Caldwell to review the same

documents, calling it "representational overkill" and asserting that Plaintiff is not entitled to compensation "for the extra time accrued by multiple attorneys working on the case." (*Id.*). In the Reply, Plaintiff "admits" that 17.3 hours "is more than the typical time devoted to case review prior to filing complaints," but maintains that there is "no legitimate reason" to reduce fees in this case. (Doc. 36 at 5). Plaintiff asserts that 17.3 hours was necessary under the facts of this case and to comply with Federal Rule of Civil Procedure 11(b), which requires an attorney to make a reasonable inquiry that the representations made in a pleading are sufficiently supported by the evidence. (*Id.* at 5, n.5).

This Court finds that the 17.3 hours billed prior to the filing of the Complaint were, by and large, reasonable. In preparing a complaint, it is reasonable to expect an attorney to review case materials and confer with other attorneys. In cases like this one, where the judicial action is an appeal of an administrative decision, such case materials would naturally include the ALJ decision, the Appeals Council decision, and other documents related to the administrative proceedings. It is also reasonable to expect attorneys to exchange emails and memos regarding the potential federal court appeal and to conduct research into legal issues. And in this case, where there appears to have been some information missing, it is reasonable to expect this entire process to take longer than usual. The Court finds Defendant's requested 12-hour reduction to be extreme and unsupported. That said, the Court recognizes Defendant's contention that 17.3 hours seems excessive—after all, even Mr. Caldwell admits that it is more time than he typically devotes to case review prior to the filing of a complaint. (Doc. 36 at 5). The Court also recognizes Mr. Caldwell's considerable experience in administrative appeals such as this. And given the duplicative nature of some of the tasks—specifically, the review of the same documents by both Ms. Fern and Mr. Caldwell—this Court finds that a reduction is appropriate. The reduction is small, however, because it is unclear to the Court whether the duplicative tasks were truly "unnecessary" or if they, instead, were needed steps along the way. Thus, the 17.3 hours spent prior to the filing of the Complaint will be reduced by 10 percent (1.7 hours). *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[Where]

the district court cannot tell by a cursory examination which hours are unnecessarily duplicative[,] . . . [it] can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.").

### B. Time Billed for Clerical Tasks

Next, Defendant argues that two itemization entries amounted to clerical work and that Plaintiff should not be compensated for such work. (Doc. 33 at 5). It is true that Plaintiff is not entitled to attorneys' fees for the performance of clerical tasks such as downloading and organizing documents and filing documents with the Court. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.1 (1989) (holding that "purely clerical or secretarial tasks" are typically considered overhead expenses, and "should not be billed at a paralegal [or lawyer] rate"); *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1543 (9th Cir. 1992) (finding that time spent on clerical matters, such as the filing of pleadings and travel time associated therewith, should not be included in the attorneys' fee award); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing fee request in response to government's contention that request included clerical tasks such as preparing cover letters, tracking packages, assembling and organizing documents, obtaining transcripts, and emails regarding filing procedures and attorney admission). "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah*, 569 F.3d at 921 (citing *Davis*, 976 F.2d at 1543).

Here, Defendant takes issue with two entries that it asserts are for clerical tasks not to be included in Plaintiff's fee request: (i) 5/6/20 for 0.1 hours ("Email from Mr. Mitchell re case identification.") and (ii) 5/28/20 for 0.1 hours ("Email from Mr. Mitchell re atty. appearance."). (Doc. 33 at 5). In the Reply, Plaintiff does not directly dispute that these were clerical tasks, nor does Plaintiff provide any additional explanation of what the tasks entailed. Instead, Plaintiff responds "[t]hese *could* be considered clerical tasks, but keeping track of what is going on in a case is part of an attorney's job even if those tasks do not require a law degree." (Doc. 36 at 6). Without more, it is not clear to the Court what the attorneys were doing, nor what emails regarding "case identification" and "atty.

appearance" entail. *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). And given that Plaintiff herself admits that they "*could* be considered clerical tasks," these two tasks will be cut in their entirety and Plaintiff's attorneys' fees are reduced by 0.2 hours.

### C. Time Billed Preparing Opening Brief

Third, Defendant argues that Plaintiff billed for duplicative and excessive hours related to preparing her Opening Briefing. (Doc. 33 at 5–6). On December 1, 2020, Ms. Fern billed 0.6 hours for reviewing the administrative record and the Complaint. (Doc. 32-2 at 3). She then billed four hours for reviewing certain transcripts and drafting the statement of facts. (*Id.*). On December 2, 2020, Ms. Fern billed four hours for drafting the Opening Brief's legal arguments, one hour for researching and drafting the medical glossary, and one hour for editing, formatting, and checking citations. (*Id.*). In sum, Ms. Fern billed 10.6 hours for preparing the Opening Brief. On February 3, 2020, Mr. Caldwell billed seven hours for reviewing Ms. Fern's draft, which involved rewriting at least one section and revising the arguments to conform with regulation changes. (*Id.*). On February 4, 2020, Mr. Caldwell billed three hours for revising the glossary and another section of the draft. (*Id.*). Also on February 4, 2020, Mr. Caldwell billed 2.1 hours for emailing the draft to Mr. Mitchell, preparing a final draft with Mr. Mitchell's edits, and drafting and filing a motion for excess pages. (*Id.*). The Opening Brief was filed on February 12, 2020. (Doc. 20). On February 12 and 15, 2020, Mr. Caldwell billed 1.5 hours for preparing a memo regarding a minor edit to the already filed Opening Brief and for emails he received regarding the Opening Brief. (Doc. 32-2 at 4). Mr. Caldwell indicates that the minor edit was not so substantial as to require an amended or refiled brief. (*Id.*). In sum, Mr. Caldwell billed 13.6 hours for his work on the Opening Brief, bringing the total hours billed for the brief's preparation to 24.2 hours total.

Defendant asserts that while it was reasonable for Mr. Caldwell to review Ms. Fern's work, "no more than a couple hours" was reasonable. (Doc. 33 at 5). Defendant reasons that the legal arguments made in the brief were "routine" for an experienced attorney like

9

Mr. Caldwell, that the brief included boilerplate language that was merely copied and pasted from previous work, and that the glossary should not take two hours to be drafted. (*Id.*). All told, Defendant requests a reduction of 10 hours from Mr. Caldwell's work on the Opening Brief. (*Id.* at 6).

The Court agrees with Plaintiff insofar as she asserts that work is not necessarily duplicative and excessive merely because it was done by more than one attorney. "[N]ecessary duplication . . . cannot be a legitimate basis for a fee reduction. It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." *Moreno*, 534 F.3d at 1113 (recognizing that "the vicissitudes of the litigation process" sometimes require lawyers to duplicate tasks and that "[f]indings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much"). Here, it was reasonable for Mr. Caldwell to review Ms. Fern's work and any duplication appears to have been necessary. The fact that he had to rewrite certain sections and revise the arguments to comply with regulation changes partially explains the seemingly excessive amount of time billed for Mr. Caldwell's review. And while the Opening Brief certainly has its share of "boilerplate" language, the majority of the twenty-seven-page brief applies the legal arguments to the distinct facts of this case. *See Riston*, No. CV-19-03050-PHX-JFM, ECF No. 23 at 6 (rejecting boilerplate argument and stating "though most Social Security appeals involve well worn legal paths, the devil is in marshalling the facts from a cold and imperfect record, which often requires a reviewer to repeatedly revisit the record and shift arguments as new details are apprehended").

However, the hours billed for drafting the glossary and for exchanging emails and memos regarding "minor edits" *after* the Opening Brief had already been filed were excessive and will be reduced. In response to Defendant's assertion that Plaintiff would not need two hours to create a glossary, Plaintiff calls the assertion "out of thin air" and then dares Defendant—or this Court—to "Try it." (Doc. 36 at 10). This response does nothing to refute Defendant's assertion and is entirely unhelpful to this Court. Further, after

reviewing glossaries previously submitted by Mr. Caldwell to this Court, it appears that the bulk of the work in drafting one is in choosing which medical terms to include. Aside from that, the medical definitions do not change, and the exercise is largely one of copying and pasting. Without any meaningful argument from Plaintiff to the contrary, the Court finds that a reduction is appropriate. Two entries refer to work being done on the glossary: (i) 12/2/20 for one hour by Ms. Fern and (ii) 2/4/21 for three hours by Mr. Caldwell. (Doc. 32-2 at 3). The 2/4/21 entry for three hours also mentions non-glossary revisions to the brief. (*Id.*). While the Court cannot be sure how much of the three hours were spent working on the glossary, the Court will reduce this entry by one hour to address the excessive time spent on the glossary. *See Aranda v. Astrue*, No. CV. 08-340-MA, 2011 WL 2413996, at *5 (D. Or. June 8, 2011) (citations omitted) ("Block billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluative the reasonableness of the number of hours expended"; "The Court may reduce the requested fee based on this lack of specificity.").

As for the hours billed for tasks *after* the Opening Brief was already filed, the Court will cut the fees entirely because it is unclear why the tasks were necessary. On February 12, 2021, one hour was billed for the following tasks: (1) emailing this Court's Order granting the motion for excess pages, (2) reviewing the already filed Opening Brief and glossary, (3) drafting a memo regarding minor edits to the Opening Brief "that should have been changed," but were not so substantial that it was necessary to file an amended or refiled brief. (Doc. 32-2 at 4). On February 15, 2021, Mr. Caldwell billed 0.5 hours for an email from Mr. Mitchell "re opening brief filed, reviewed." (*Id.*). Given that the Opening Brief had already been filed, it is unclear why Plaintiff should be awarded fees for any of these tasks. The Court will reduce Plaintiff's fees by 1.5 hours. In sum, the Court will reduce the fees associated with Plaintiff's drafting of the Opening Brief by 2.5 hours.

**D. Time Billed Opposing Defendant's Motion to Remand for Further Proceedings**

Fourth, Defendant argues that Plaintiff is not entitled to 7.1 hours in fees related to

her Reply brief, which challenged Defendant's motion to remand for further administrative proceedings. (Doc. 33 at 6). In her Opening Brief, Plaintiff assigned multiple errors to the ALJ and sought a remand for an award of benefits—*without* rehearing or further proceedings. (Doc. 20 at 26–27). Defendant responded with a request to remand for further proceedings to allow the ALJ to properly evaluate the opinion evidence—one of the areas in which Plaintiff claims the ALJ committed error. (Doc. 23 at 11–18). In her Reply, Plaintiff objected to Defendant's motion for remand for further proceedings and reasserted her request for remand *without* further proceedings. (Doc. 24 at 10–11). This Court rejected Plaintiff's claims of error and affirmed the ALJ's decision. (Doc. 26). The parties then jointly moved for the Court to amend its judgment and to remand the case to the Commissioner for further proceedings. (Doc. 28). This Court granted the parties' motion, reversed the ALJ's decision, and remanded for further proceedings. (Doc. 29).

Defendant argues now that Plaintiff is not entitled to fees related to her "futile" challenge to Defendant's motion to remand. (Doc. 33 at 6). "The key question in assessing whether Plaintiff can obtain fees for unsuccessfully challenging a remand is whether Plaintiff's belief in her right to relief was reasonable." *Gutierrez v. Colvin*, No. CV-13-02168-PHX-DGC, 2015 WL 254642, at *1 (D. Ariz. Jan. 20, 2015). In other words, if a plaintiff *unreasonably* argues that remand for an award of benefits is appropriate, thereby objecting to Defendant's offer to remand for further proceedings, then that plaintiff is not entitled to fees incurred while drafting the unreasonable arguments. Here, Defendant argues that Plaintiff's Reply arguments—opposing the motion to remand—were unreasonable because this Court rejected them and affirmed the ALJ's decision. (Doc. 33 at 6). The Court is unpersuaded by this argument; just because the Court rejects an argument does not mean the argument was unreasonable and that fees should be reduced. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) ("[A] plaintiff who has won substantial relief should not have her attorney's fees reduced simply because the district court did not adopt each contention raised."). Instead of explaining to the Court how Plaintiff's arguments unreasonably opposed a remand for further

proceedings, Defendant offers no other support for its contention. *See Am. Civ. Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("Those opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'").

Moreover, the Court itself does not find that Plaintiff's arguments were unreasonable. Plaintiff addressed the credit-as-true standard[4] and asserted that it was met under the facts of this case. While this Court was ultimately not persuaded by Plaintiff's arguments, Plaintiff had the right to argue for an award of benefits rather than merely stipulating to remand for further proceedings. The Court will not reduce Plaintiff's fees for opposing Defendant's motion to remand for further proceedings.

### E. Time Billed After Court's Decision

Finally, Defendant argues that Plaintiff's counsel spent excessive time after the Court's decision reviewing the file and conferencing with others regarding a Rule 59(e) motion that was never filed. (Doc. 33 at 6–7). Defendant requests a one-hour reduction to the 3.8 hours that were logged for these tasks on August 20 and August 26, 2021. (*Id.*). Although Defendant acknowledges that it was reasonable for Plaintiff's counsel to spend time reviewing the Court's decision and considering post-judgment options, Defendant asserts the time spent here was excessive given counsel's familiarity with the record and because Plaintiff ultimately never filed a Rule 59(e) motion. (*Id.*). Plaintiff responds that Defendant's argument "just makes no sense" because the parties filed a joint Rule 59(e) motion. (Doc. 36 at 10). The Court agrees with Plaintiff. While it is true that Plaintiff never

---

[4] The credit-as-true standard provides three requirements that must be met for a remand for an award of benefits—as opposed to a remand for further proceedings—to be appropriate: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

filed a Rule 59(e) motion *on her own*, the motion was instead filed *jointly* and granted by this Court. (Docs. 28 & 29). Defendant fails to show any meaningful distinction as to whether the motion was filed solely by Plaintiff or jointly by the parties. The time Plaintiff spent reviewing this Court's decision and considering post-judgment options was reasonable because it led to Plaintiff's decision to join Defendant on the Rule 59(e) motion. The Court denies Defendant's request to reduce fees on these grounds.

### IV. CONCLUSION

The reductions in time (4.4 hours—1.9 hours in 2020 and 2.5 hours in 2021) result in a total deduction of $929.13. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Award of Attorney Fees (Doc. 31) is **granted as modified**: Plaintiff is awarded $12,065.01 in reasonable attorneys' fees under 28 U.S.C. § 2412(d).

**IT IS FURTHER ORDERED** that if, after receiving this Order, the Commissioner of Social Security Administration determines upon effectuation of the Court's Order that Plaintiff does not owe a debt that is subject to offset under the Treasury Offset Program, and agrees to waive the requirements of the Anti-Assignment Act, the fees will be made payable to Plaintiff's attorney. However, if there is a debt owed under the Treasury Offset Program, the Commissioner cannot agree to waive the requirements of the Anti-Assignment Act, and the remaining EAJA fees after offset will be paid by a check made out to Plaintiff but delivered to Plaintiff's attorney.

Dated this 8th day of February, 2022.

Honorable Steven P. Logan
United States District Judge